BOUDIN, Circuit Judge.
This case presents the question whether equitable estoppel may be applied against a government employer based upon the employer’s oral assurances to the employee of coverage under the Family and Medical Leave Act (“FMLA”), 29 U.S.C. § 2601 et seq. (2006). The employer denies both the alleged assurances and the claim that the employee was terminated for taking leave; but because the employee’s case *2 was dismissed on summary judgment, the denials are of no consequence and we assume arguendo the latter’s version of events. Ruiz-Rosa v. Rullan, 485 F.3d 150,155 (1st Cir.2007).
At the time of the events, Kathleen Nagle had been working since the year 2000 as a part time employee in the position of school monitor for the Acton-Boxborough Regional School District in Massachusetts. On January 12, 2004, Nagle requested leave under the FMLA in order to tend to her ailing husband. The FMLA entitles eligible employees to take twelve weeks of unpaid leave during any twelve-month period to care for a family member who is seriously ill. See Engelhardt v. S.P. Richards Co., Inc., 472 F.3d 1, 3 (1st Cir.2006).
To be eligible for FMLA leave, an employee must have worked at least 1,250 hours in the 12-month period before taking leave. 29 U.S.C. § 2611(2). Nagle was not eligible; in the 12 months prior to her request, she had worked only 554 hours. However, she asserts that George Frost, the district’s deputy superintendent, told her that she could take FMLA leave. Frost says he told Nagle she was not eligible but could take non-FMLA leave with continued health insurance, but, on the motion for summary judgment against her, her version governs. Nagle took leave until April 2004, writing Frost in March to thank him for allowing her to take FMLA leave; it appears no answer was ever made to the letter.
In February 2005, Nagle took several days off to care for her husband and she says that the principal’s assistant at her school suggested to Nagle that she take family medical leave. Nagle requested FMLA leave in a letter dated February 18, 2005, but does not claim to have received a reply, and then took off eight weeks of leave. In March 2005, Nagle says she thanked Frost for granting her FMLA leave and that he never explained that she was not entitled to FMLA leave. Frost disputes this as well; again, Nagle’s account must be assumed.
Once Nagle returned to work in April 2005, she says she met again with Frost who told her that additional FMLA leave was available if necessary, and after her husband reentered the hospital, she again in early May 2005 took what she believed to be FMLA leave. Nagle’s husband died at the beginning of June. She says that she was told not to worry about rushing to return and that Frost told her that she had “nothing to worry about.” No writing from Frost confirms these assurances, but we assume that they occurred.
The school year ended in June 2005. On July 12, 2005, Nagle’s employment with the school district was terminated. Nagle concluded that this was because she had taken leave and in August 2007, Nagle filed suit against the school district for violating the FMLA. 29 U.S.C. § 2615(a)(1). The school district countered that Nagle was not eligible for FMLA leave and that her job ended because the district had completed construction work on a new building and no longer needed monitors in the parking lots.
In due course, the school district moved for summary judgment on the ground that Nagle was not eligible for FMLA leave and as a result had no claim. She responded that the school district was es-topped from relying on her lack of eligibility because of Frost’s alleged assurances and that it had taken her leave into account in terminating her position. After further briefing the district court refused to apply estoppel against the school district and granted summary judgment in its favor.
Nagle now appeals, and the central issue — whether equitable estoppel is avail *3 able in the present circumstances — presents a legal issue reviewed de novo. Southex Exhibitions, Inc. v. Rhode Island Builders Ass’n, Inc., 279 F.3d 94, 104 (1st Cir.2002). In urging estoppel, Nagel relies principally on federal precedent and neither side argues that state law should apply. Because this position is plausible and uncontested and because it might not matter anyway, we accept the premise without endorsing it. Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 n. 4 (2d Cir.1998).[1]
Where an employee properly takes FMLA leave, the employee cannot be discharged for exercising a right provided by the statute, but can still be discharged for independent reasons. Kohls v. Beverly Enters. Wis., Inc., 259 F.3d 799, 804-05 (7th Cir.2001). The governing regulations provide that an employer “cannot use the taking of FMLA leave as a negative factor in [an] employment action[].” 29 C.F.R. § 825.220(a)(1), (c) (2005). On this appeal, we assume arguendo that Nagle’s taking of leave did play some role in her termination.
Nagle does not claim that she was in fact eligible for FMLA leave, but she argues that the school district is estopped from denying coverage. The contours of equitable estoppel doctrine, where directed against a private party, are conventional. The doctrine seeks to prevent injustice when an individual detrimentally and predictably relies on the misrepresentation of another. Mimiya Hospital, Inc. SNF v. U.S. Department of Health & Human Services sums up the doctrine thusly:
[A] party seeking to assert estoppel must demonstrate that (1) the party to be estopped made a “definite misrepresentation of fact to another person having reason to believe that the other [would] rely upon it”; (2) the party seeking estoppel relied on the misrepresentations to its detriment; and (3) the “reliance [was] reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary’s conduct was misleading.”
331 F.3d 178, 182 (1st Cir.2003) (alterations in original) (citation omitted).
If the school district were a private employer, Nagle would be entitled to a trial as to whether Frost did misrepresent matters, as to her reliance and on the reasonableness of any such reliance — the last being a “mixed” question that is at bottom normative but is regularly given to a jury where the matter is reasonably debatable. See Grande v. St. Paul Fire & Marine Ins. Co., 436 F.3d 277, 283 (1st Cir.2006).
But under federal precedent, governments in the past have not been subject to estoppel or, more recently, have been held not subject to estoppel, save exceptional situations that we have called “hen’s-teeth rare,” Costa v. INS, 233 F.3d 31, 38 (1st Cir.2000).[2] Various reasons have been giv *4 en for excepting governments, e.g., Heckler v. Cmty. Health Serv., 467 U.S. 51, 65-66, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), but — like many such limitations in favor of the state — the explanation mingles history, doctrine {e.g., sovereign immunity; agency), and practical concerns. Cf. Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S.Ct. 526, 51 L.Ed. 834 (1907) (Holmes, J.).
As with sovereign immunity, Congress has made exceptions but, in the case of estoppel, the exceptions are far narrower and more sporadic than the categorical limitations in the Federal Tort Claims Act, 28 U.S.C. § 2680 (2006).[3] Possibly, the problem is harder to solve: often, a claim of honest reliance is on one side of the scale and, on the other, justified concerns to assure enforcement of the law, about the lack of authority by officials to vary it, and about the prospect of spurious law suits. •
The Supreme Court has been very cautious in language, and even more cautious in practice, about extending estoppel to the government. It has said, but only in a dictum, that “affirmative misconduct” by the government can lead to estoppel, Heckler, 467 U.S. at 60, 104 S.Ct. 2218, but most estoppel claims involve misstatements so the quoted phrase, if read broadly, would wipe out the immunity; and, in practice, the Supreme Court has almost never estopped the government — outside of criminal eases or deportation.[4]
Tellingly, the Supreme Court’s most recent pronouncement, in Richmond, is a step back from Heckler’s dictum; in Richmond, the Supreme Court once again rejected a claim of estoppel against the government on the ground that it would undercut the policy of the statute in question. 496 U.S. at 424. Richmond’s underlying rationale — the need for enforcement of the law — is basically the argument against allowing estoppel against the government. The law here is that Nagle did not have enough hours for FMLA leave.
This court, too, has not quite closed the door to exceptions but has repeatedly refused to apply estoppel against the government in ordinary situations where a private party would or might have been estopped.[5] In one case we used estoppel language in holding a statute of limitations tolled based on government representations. Ramirez-Carlo v. United States, 496 F.3d 41, 48-50 (1st Cir.2007). But equitable tolling of statutes of limitation has long operated against the government, see Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), and the case is largely a variation on that theme.
Statutes of limitation are a special case because allowing an out-of-time law suit *5 does not create new substantive obligations but merely requires the government to defend a law suit that could have been timely brought. Such limitations do not require prejudice and are often described as “disfavored defense[s].” Ameel v. United States, 426 F.2d 1270, 1274 (6th Cir.1970). Nagle’s claim is not barred by a statute of limitations: she simply has no right to FMLA leave under the statute because she did not work the requisite number of hours.
Nagle’s case is hardly unsympathetic. Her husband was sick and, by her account, she was several times assured by Frost that she could have FMLA leave. Justice Jackson, a model of humane good sense, made the classic argument in favor of estoppel where the citizen relies on official statements, Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 387, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (Jackson, J., dissenting); but his opinion was in dissent. The core difficulty is that estoppel against the government poses real problems.
Governments have many “agents,” who may or may not have authority to speak for the government in the matter at hand and whose casual representations are hard to control. Anyone can claim, without any confirming proof, that some official or clerk misinformed the person about his or her legal rights. Further, the public has a general interest in having the same rules enforced against everyone; affording special treatment to someone who was misinformed creates special treatment, burdens on others or both.
Nagle is not asking to engage in prohibited conduct; this ease is essentially about money. But, although the amount here is probably small, it could in other estoppel cases be very large; and small claims— many perhaps sympathetic — can add up to a great deal. As the Supreme Court explained in Richmond, 496 U.S. at 433, 110 S.Ct. 2465:
To open the door to estoppel claims would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens, imposing an unpredictable drain on the public fisc. Even if most claims were rejected in the end, the burden of defending such estoppel claims would itself be substantial.
Richmond, although in tone a retreat from Heckler, repeats Heckler’s earlier dictum about the need to show “affirmative misconduct”; but that phrase has usually been taken to mean something more than careless misstatements, see, e.g., Dantran, 171 F.3d at 67; Clason v. Johanns, 438 F.3d 868, 872 (8th Cir.2006); Mukherjee v. INS, 793 F.2d 1006, 1008-09 (9th Cir. 1986), and nothing in Nagle’s complaint suggests anything worse than uninformed reassurance on the part of a school official trying to be helpful to Nagle.
By her own account, Nagle has nothing in writing from Frost or other officials to confirm that any such representation was made to her. A prime danger in applying estoppel to the government is the prospect of he said-she said trials as to whether an alleged oral statement was ever made. Heckler itself made this point. 467 U.S. at 65, 104 S.Ct. 2218. A writing is far more likely to represent a considered opinion on the part of the official, rather than a casual comment, and is also more reasonably relied upon as an authoritative assertion.
Finally, assuming that Nagle did not know that she was far below the minimum hours needed for FMLA leave, Nagle plainly recognized some potential problem with her ability to get such leave: nothing else explains her actions. She also knew that she had nothing in writing: she wrote letters assertedly confirming oral statements that are otherwise undocumented *6 and let matters lie even though no written confirmation was ever provided.
Some mechanism should exist for employees to get rulings on whether they are entitled to FMLA leave; and regulations under the existing statute, recently strengthened but after the events in this case, now require employers to provide written rulings on request. See 29 C.F.R. § 825.300(d) (2009). Neither side claims that the present regulation applies to this case, but the regime underscores the utility of insisting upon a writing and suggests that statutory or administrative solutions can be crafted.
If Richmond had come out the other way, Heckler’s dictum might be taken to presage a new approach by the Court, entitling lower courts to develop the beachhead. That result would have its attractions, laid out by Justice Jackson, although estoppel is a crude tool for making the needed policy choices and marking out limits. But allowing estoppel here would be tantamount to allowing it in the mine run of cases. Supreme Court precedent, and our own, forbid this course.

Affirmed.

. The claim is made under a federal statute and could be affected by federal regulations, so federal estoppel law could well govern in the interests of uniform application. Further, Massachusetts precedent, like federal precedent, is at best hesitant in applying estoppel against governmental units. See, e.g., Morton St. LLC v. Sheriff of Suffolk County, 453 Mass. 485, 903 N.E.2d 194, 199-200 (2009); Holahan v. City of Medford, 394 Mass. 186, 474 N.E.2d 1117, 1119-20 (1985); Phipps Prods. Corp. v. Mass. Bay Transp. Auth., 387 Mass. 687, 443 N.E.2d 115, 118-19 (Mass.1982).

. See, e.g., Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 419-23, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); Schweiker v. Hansen, 450 U.S. 785, 788, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917); Mimiya Hosp., 331 F.3d at 183 n. 1; Phelps v. Fed. Emergency Mgmt. Agency, 785 F.2d 13, 16-17 (1st Cir.1986); *4 United States v. Ven-Fuel, Inc., 758 F.2d 741, 761 (1st Cir.1985); 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3652, at 245 & n. 26 (3d ed. 1998 & Supp.2009).

. See, e.g., Federal Trade Commission Act, 15 U.S.C. § 57b-4(b) (2006); Truth in Lending Act, 15 U.S.C. § 1640(f); Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1028.

. Compare Richmond, 496 U.S. at 421-22, 110 S.Ct. 2465; Heckler, 467 U.S. at 60, 104 S.Ct. 2218; INS v. Miranda, 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam), with United States v. Penn. Indus. Chem. Corp., 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951).

. Dantran, Inc. v. U.S. Dep’t of Labor, 171 F.3d 58, 66-68 (1st Cir.1999); Frillz, Inc. v. Lader, 104 F.3d 515, 518 (1st Cir.1997); Phelps, 785 F.2d at 16-19; Ven-Fuel, 758 F.2d at 761.