# United States Court of Appeals
## For the First Circuit

No. 12-2133

MINERVA CARRERO-OJEDA,

Plaintiff, Appellant,

v.

AUTORIDAD DE ENERGÍA ELÉCTRICA; VÍCTOR RUIZ, in his personal and official capacities; MIGUEL CORDERO, in his personal and official capacities; JOHN DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Lipez, and Kayatta,
Circuit Judges.

Wilbert Méndez Marrero for appellant.
Angel A. Valencia-Aponte for appellees Autoridad de Energía Eléctrica; Víctor Ruiz, in his official capacity; and Miguel Cordero, in his personal and official capacities.
Susana I. Peñagarícano-Brown, Assistant Solicitor General, Commonwealth of Puerto Rico, with whom Margarita L. Mercado Echegaray, Solicitor General, Commonwealth of Puerto Rico, was on brief, for appellee Víctor Ruiz, in his individual capacity.

June 20, 2014

**THOMPSON, <u>Circuit Judge</u>.** Plaintiff-appellant Minerva Carrero-Ojeda ("Carrero") says that after she blew the whistle on wrongdoing in her office, her employer and her superiors retaliated against her in myriad ways. They threatened her, unjustly disciplined her, and — most relevantly for our purposes — deprived her of benefits owed to her under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and ultimately fired her. Carrero now appeals the district court's dismissal of her FMLA complaint for failure to state a claim. She also challenges the court's failure to grant or, at least, expressly deny her post-judgment request for leave to amend the pleadings. For reasons we explain shortly, we affirm.

## I. BACKGROUND

Because this appeal follows a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), we take as true the facts alleged in Carrero's complaint and draw all reasonable inferences in her favor.[1] <u>See</u> <u>Maloy</u> v. <u>Ballori-Lage</u>, 744 F.3d 250, 251 (1st Cir. 2014).

### A. The Facts

Carrero began working for defendant-appellee Autoridad de Energía Eléctrica (the Puerto Rico Electrical Power Authority, or "PREPA") in September 1986. At all times relevant to her

---

[1] Unlike the district court, we do not consider the three documents that defendants appended to their motion to dismiss. We explain why in Part II(A), <u>infra</u>.

complaint, Carrero held the position of administrative coordinator in PREPA's Aguadilla Technical Office. Defendant-appellee Víctor Ruiz was district engineer of the technical section and Carrero's immediate supervisor. Defendant-appellee Miguel Cordero was PREPA's executive director.

In August 2007, PREPA's internal affairs office initiated an investigation of corruption in the Aguadilla Technical Office. Carrero's supervisor, Ruiz, was one of the targets. Carrero testified and provided information for the investigation. To get back at her, Carrero says, Ruiz, "in connection and conspiracy with other employees, commenced a pattern of discriminatory acts against [her] affecting the terms, conditions, benefits[,] and privileges of her employment." Carrero claims "[t]he acts of discriminatory retaliation included denying [her] job promotions, denying [her] marginal benefits, submitting [her] to unjust disciplinary measures, threatening [her] with dismissal, initiat[ing] illegal administrative procedures[,] . . . illegally discharging her from her employment," and "violating her rights under [the] FMLA."

Specifically, in November 2007, Carrero alleges that Ruiz "commenced an administrative investigation" against her "for allegedly having photocopied her personnel file without [his] consent." Carrero says this occurred "during the period when [she] was on family leave protected by the FMLA[] for the care of her mother due to a medical procedure she had to undergo." The

-3-

subsequent investigation led PREPA's chief human resources officer, Alex Carvajal,[2] to file administrative charges against Carrero for violations of PREPA's Rules of Conduct 18 and 29, as well as Notes 1 and 5, on January 30, 2008. (Carrero does not tell us what these rules prohibit or what the charges stated. From now on, we'll call them the "January 2008 charges.")

While the January 2008 charges were pending, other harassment was underway. For example, in March 2008, PREPA's labor affairs office refused to pay Carrero's travel expenses to attend an administrative hearing, though it had always reimbursed her for such travel before. Carrero contends that this shows the labor office was in cahoots with Ruiz and company. Because of the denial, Carrero filed an administrative claim "before the Court of Appeals" (she does not say which one), which ordered a hearing. Carrero says PREPA did not comply with that court's judgment (but does not say what the judgment was).

In April 2008, PREPA's internal affairs office summoned Carrero to offer testimony in the corruption investigation of the Aguadilla Technical Office. A few weeks later, Ruiz instructed a security guard to withhold a vehicles report from Carrero that she usually maintained and that she had planned to give to the investigators.

---

[2] We use the spelling of Carvajal's name found in defendants' answer to the complaint.

-4-

In June 2008, Carrero's mother fell and injured herself. Carrero requested and was granted leave to care for her. While Carrero was away, human resources chief Carvajal and two co-workers (whose roles Carrero does not explain) promoted three PREPA employees to superior positions in the Aguadilla Technical Office "without granting [Carrero] the opportunity . . . [to] interview and knowing[] she applied for such position." In doing so, Carrero says they deprived her of an opportunity for promotion in violation of her FMLA rights. In response, Carrero filed complaints with the Equal Employment Opportunity Commission ("EEOC"), as well as a grievance with the labor affairs office, none of which were ever resolved.

Also while Carrero was out on leave, Ruiz and two different co-workers (whose roles Carrero likewise does not explain) instigated a second administrative investigation of Carrero. The ensuing inquiry caused human resources chief Carvajal to file a second set of administrative charges against Carrero on August 8, 2008 for violations of PREPA's Rules of Conduct 17 and 27. (Again, Carrero does not tell us what these rules prohibit or what the charges stated. We'll call them the "August 2008 charges" from here on out.) In response, Carrero filed another complaint with the EEOC against Ruiz for violating her FMLA rights that was also never resolved.

In September 2008, Ruiz tasked Carrero with preparing absence letters for employees with unsatisfactory attendance. Then, in October 2008, Ruiz asked Carrero to photocopy the personnel files of every Aguadilla Technical Office employee. Carrero complains that both jobs were beneath her managerial status and were better suited to "clerical personnel." Additionally, she says the assignments amounted to "employment harassment" because they violated PREPA's procedures and because she was then under investigation for copying her own personnel file without permission. In response, she filed a union grievance against Ruiz, but no resolution was reached.

On January 23, 2009, a hearing officer reviewing the January 2008 charges recommended Carrero's discharge. A few weeks later, an employee acting on Ruiz's behalf twice attempted to "force [Carrero] to receive" a copy of the resolution of the charges — once at Ruiz's office and once at Carrero's office — but Carrero refused. Carrero perceived these attempted deliveries to be "acts of intimidation."

In May 2009, Ruiz, along with unnamed co-conspirators in PREPA's labor office, deducted 6 hours and 16 minutes from Carrero's pay and made her use vacation leave for time spent attending a meeting regarding her EEOC complaints against Ruiz and a co-worker for violating her FMLA rights. Later, PREPA's director

of transmission and distribution ordered that Carrero be reimbursed for the discounted hours.

On June 22, 2009, though one hearing officer had already recommended Carrero's termination based on the January 2008 charges, Cordero — then newly appointed as executive director — ordered a second hearing on those charges before a different officer. In the meantime, in September 2009, a PREPA accounting office employee denied Carrero's reimbursement request for $201 for travel to San Juan for a meeting with the labor affairs office. The office usually paid Carrero back promptly for her work-related expenses.

On May 25, 2010, Carrero informed Cordero by letter that she was a collaborating witness in the internal corruption investigation. Shortly thereafter, on June 10, 2010, a second hearing officer recommended Carrero's discharge based on the January 2008 charges.

Not much later, on August 19, 2010, Carrero again applied for family leave to take care of her sick mother, "who was suffering [from] various serious health conditions which might need emergency treatment and medical care outside and at home." On September 2, 2010, Ruiz recommended that Carrero's request be granted. Another employee approved her request that same day, but Carrero did not take the leave immediately.

In October 2010, as a result of the administrative investigation of corruption in the Aguadilla Technical Office, the internal affairs office recommended filing charges against Ruiz, among others, for embezzlement. Thereafter, Carrero says she was "subject[ed] to threats and retaliation by . . . Ruiz" and others under investigation, causing her to "fear[] for her life."

"By the middle of October[] 2010," Carrero's lawyer received a letter signed by executive director Cordero saying that Carrero was discharged from her position effective October 3, 2010. Carrero's lawyer told her about the letter, but Carrero herself was not notified by PREPA, so she kept working as usual. Then, on October 27, 2010, Carrero's lawyer received a second letter, this time signed by Angel Rivera (another player whose role Carrero does not explain) on Cordero's behalf, reiterating that Carrero had been discharged but amending the effective date to October 31, 2010. Carrero says she did not receive a copy of this letter either.

In the middle of all this, on the night of October 21, 2010, Carrero's mother fell and "injur[ed] her hip and other parts of her body." The following day, Carrero notified Ruiz that she needed three months of family leave to take care of her mother and "request[ed] to activate the family leave already approved" on September 2 "for the time she was going to be absent." Carrero does not say whether she in fact missed work to care for her mother that day, but because she says she "requested her immediate absence

from work" after her mother fell, we assume she in fact stopped going to work on October 22. And because her employment was terminated a few days later, we also assume she did not return to work following this absence, though her complaint does not say so expressly.

On November 4, 2010 — a few days after Carrero's discharge had taken effect — Carrero's lawyer received a letter from PREPA's labor office stating that PREPA would not acknowledge Carrero's leave activation request. Carrero's mother passed away on June 18, 2011. Carrero says she did not personally receive a letter notifying her of her discharge until July 15, 2011.

## B. Travel of the Case

On October 31, 2011, Carrero filed a complaint against PREPA, Ruiz and Cordero in their personal and official capacities, and John Doe,[3] alleging violations of her rights under (1) the FMLA, and (2) the Puerto Rico Whistle Blower Act, as provided by P.R. Laws Ann. tit. 29, § 194, and P.R. Laws Ann. tit. 1, § 601.

With respect to her FMLA claim, Carrero said that in October 2010 — though she qualified for leave, she had given PREPA adequate notice that she intended to take leave, and PREPA had already approved the leave — when she tried to "activate" the

---

[3] Carrero described John Doe as "any person who may be responsible for the acts committed against [her] whose identity is not known at the moment," and said she would join such person once his or her identity became known.

leave, PREPA wrongfully "denied her the applicable FMLA benefits" and "illegally discharged [Carrero] from her position . . . during the period she was protected by the FMLA."  By discharging her on October 31, 2010, PREPA "illegally interfered [with], restrained[,] and denied [her] the family leave approved on September 2, 2010 and activated on October 22, 2010."  There was "no . . . justification" for discharging her "during the period she was under the protection of the FMLA," she said, other than to "retaliate against her [and] to deprive her of her right[s] as part of the pattern of harassment and retaliation [she] suffered."[4]

On January 18, 2012, defendants filed a motion to dismiss Carrero's complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief could be granted.  They contended Carrero was discharged for disciplinary reasons entirely unrelated to any exercise of her FMLA rights.  Moreover, they argued the FMLA did not insulate Carrero from adverse employment actions unrelated to her FMLA rights.

Defendants attached three documents to their motion to dismiss: (1) the disciplinary complaint filed against Carrero on January 30, 2008, which lays out relevant personnel regulations and details Ruiz's accusations against her; (2) the administrative

---

[4] Carrero also claimed PREPA canceled her salary and benefits at the beginning of October, though she was not slated to be discharged until October 31.  She did not file a separate claim based on this premature termination.

-10-

ruling recommending Carrero's discharge, dated June 10, 2010 and amended July 30, 2010; and (3) the letter discharging Carrero effective October 31, 2010, dated October 14, 2010. Carrero had not attached these documents to her complaint, but she did not object to their consideration or challenge their authenticity. Rather, she cited the documents in her opposition to the motion to dismiss, saying they "serve[d] to demonstrate the pattern of retaliation perpetuated by [defendants]."

On June 27, 2012, the district court granted defendants' motion to dismiss. In evaluating the motion, the court considered both Carrero's complaint and defendants' documents. Assessing Carrero's FMLA claim, the court found PREPA had "provided [Carrero] with all required entitlements" and "discharged [her] for reasons entirely independent of the FMLA," while Carrero had "fail[ed] to demonstrate a causal connection between her FMLA leave and her discharge." Accordingly, the court dismissed Carrero's FMLA claim with prejudice, and, lacking any federal claim upon which to anchor supplemental jurisdiction, dismissed Carrero's Puerto Rico law claims without prejudice.

On July 25, 2012, Carrero filed a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"). She argued the pleadings adequately supported her allegations that defendants had interfered with her FMLA rights.

In the alternative, she requested leave to amend the pleadings. The district court denied her motion a few days later.

On August 10, 2012, Carrero filed a motion for reconsideration of the order denying her motion. Defendants objected because Carrero filed the motion without the court's leave. The district court denied the motion on August 13, 2012. This timely appeal followed.

## II. ANALYSIS

Before us, Carrero argues the district court erred by finding that her complaint did not state a sufficiently plausible claim for relief to withstand defendants' motion to dismiss. In the alternative, she contends the district court abused its discretion by not granting or specifically denying her request for leave to amend the pleadings.[5]

We find Carrero's arguments unpersuasive. But before we turn to the merits of her claims, we pause to ascertain what materials are properly before us.

## A. Configuring the Record

At the motion-to-dismiss stage, our primary focus is on the complaint. See, e.g., Maloy v. Ballori-Lage, 744 F.3d 250, 251 (1st Cir. 2014). Ordinarily, courts may not consider any documents "outside of the complaint, or not expressly incorporated therein,"

---

[5] Carrero does not challenge the district court's dismissal without prejudice of her Puerto Rico law claims.

-12-

without converting the motion into one for summary judgment. <u>Alt.</u> <u>Energy, Inc.</u> v. <u>St. Paul Fire and Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001) (citing <u>Watterson</u> v. <u>Page</u>, 987 F.2d 1, 3 (1st Cir. 1993)).  However, there is a narrow exception for documents — the authenticity of which is not challenged — that are central to the plaintiff's claim or sufficiently referred to in the complaint, even if those documents are not physically attached to the pleading.  <u>Id.</u> (citing <u>Watterson</u>, 987 F.2d at 3); <u>see also</u> <u>Schatz</u> v. <u>Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012); <u>Rodi</u> v. <u>S. N.E. Sch. of Law</u>, 389 F.3d 5, 12 (1st Cir. 2004); <u>Beddall</u> v. <u>State St. Bank & Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998).

Here, when appraising defendants' Rule 12(b)(6) motion, in addition to the complaint, the district court considered three documents submitted by defendants.  As a quick refresher, those documents were: (1) the January 2008 disciplinary complaint filed against Carrero; (2) the June 2010 administrative ruling recommending Carrero's discharge; and (3) the October 2010 letter terminating Carrero.  Though Carrero had not appended those documents to her complaint, the court said she had "ma[de] explicit reference to" them, so it could properly consider them.

It is a close question whether these documents are sufficiently referred to in Carrero's complaint to warrant consideration at this stage. <u>See</u> <u>Alt. Energy, Inc.</u>, 267 F.3d at

-13-

33. While Carrero mentioned the October 2010 letter in her complaint, she did not directly cite the disciplinary complaint or administrative ruling; rather, she simply discussed the proceedings memorialized in those documents.

Absent any preserved objection by either party, we, like the district court, could choose to regard the documents "as part of the pleadings" and consider them here. See Maloy, 744 F.3d at 251 n.1 (citing Watterson, 987 F.2d at 4). But because we find Carrero's complaint insufficient to surmount defendants' motion to dismiss on its own, we feel no need to muddy the waters of our analysis by considering defendants' documents. So we move on to the merits, considering Carrero's complaint alone.

## B. Family and Medical Leave Act Claims

Carrero's main contention on appeal is that her complaint contained sufficient factual allegations to make out a plausible claim for relief under the FMLA. Accordingly, she says the district court erred by granting defendants' motion to dismiss.

## 1. Standard of Review

We review orders granting motions to dismiss under Rule 12(b)(6) de novo, applying the same criteria as the district court. Schatz, 669 F.3d at 55. Our "sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." Ocasio-Hernández v. Fortuño-Burset,

-14-

640 F.3d 1, 7 (1st Cir. 2011) (citing Fed. R. Civ. P. 12(b)(6)). In other words, we ask whether the complaint "contain[s] sufficient factual matter to state a claim to relief that is plausible on its face." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013) (internal quotation mark omitted).

We proceed in two steps:  First, we "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz, 669 F.3d at 55.  Second, we take the facts of the complaint as true, "drawing all reasonable inferences in [plaintiff's] favor, and see if they plausibly narrate a claim for relief." Id.

"Plausible," we have noted, "means something more than merely possible." Id.  And a complaint that "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility.'" Ocasio-Hernández, 640 F.3d at 12 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

However, a complaint need not "plead facts sufficient to establish a prima facie case," Rodríguez-Reyes, 711 F.3d at 54 (alteration added), or "allege every fact necessary to win at trial," Rodríguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283 (1st Cir. 2014), to make out a plausible claim. See also Swierkiewicz v. Sorema, 534 U.S. 506, 515 (2002).  "The prima facie standard is an evidentiary standard, not a pleading standard,

-15-

and there is no need to set forth a detailed evidentiary proffer in a complaint." Rodríguez-Reyes, 711 F.3d at 54 (alteration added).

That said, the elements of a prima face case remain relevant to our plausibility assessment, as "[t]hose elements are part of the background against which a plausibility determination should be made." Id. Though "[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action," reference to the prima facie elements can help a court determine whether the "cumulative effect of the complaint's factual allegations" is a plausible claim for relief. Id. at 55 (brackets omitted) (internal quotation marks omitted).

The bottom line is that "the combined allegations, taken as true, must state a plausible, not merely conceivable, case for relief." Ocasio-Hernández, 640 F.3d at 12 (quoting Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.2d 25, 29 (1st Cir. 2010) (Souter, J.)). Having thus described the plausibility bar Carrero must overcome, we next provide a basic FMLA primer before we consider Carrero's FMLA claims.

**2. FMLA Primer**

The FMLA was enacted to help working women and men balance the competing demands of work and personal life. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998); see 29 U.S.C. § 2601(b)(1)-(2). It includes two types of provisions: "those establishing substantive rights and those providing

protection for the exercise of those rights." Colburn v. Parker Hannifin, 429 F.3d 325, 330 (1st Cir. 2005); see, e.g., 29 U.S.C. §§ 2612, 2614, 2615.

In terms of substantive rights, the FMLA entitles an employee to take twelve weeks of leave during any twelve-month period for a variety of reasons, including to care for a family member — such as a parent — with a serious health condition. Nagle v. Acton-Boxborough Reg'l Sch. Dist., 576 F.3d 1, 2 (1st Cir. 2009); Hodgens, 144 F.3d at 159 (citing, inter alia, 29 U.S.C. § 2612(a)(1)(C)). Upon an employee's return, her employer must reinstate her to the same or an equivalent position, without any loss of accrued seniority. Colburn, 429 F.3d at 330 (citing, inter alia, 29 U.S.C. § 2614(a)(1) and 29 C.F.R. §§ 825.214(b), 825.216).

To protect these rights, the FMLA and its accompanying regulations make it unlawful for any employer to, among other things: (1) "interfere with, restrain, or deny the exercise" of any FMLA right, 29 U.S.C. § 2615(a)(1); or (2) retaliate or "discriminat[e] against employees . . . who have used FMLA leave," such as by "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions[,] or disciplinary actions," 29 C.F.R. § 825.220(c); see also 29 U.S.C. § 2615(a)(2). See Colburn, 429 F.3d at 330-31 (explaining the origins of and overlap between FMLA interference and retaliation claims).

In her complaint, Carrero contends that defendants both interfered with and retaliated against her for exercising her FMLA rights. We tackle each of her claims in turn, beginning with retaliation for ease of analysis.

**3. Retaliation Claim**

Carrero first alleges that defendants impermissibly retaliated against her for exercising her FMLA rights when they fired her while "she was under the protection of [the] FMLA" in October 2010. She says her termination represented the culmination of a "pattern of discriminatory acts" by defendants that began after she started helping with the internal corruption investigation in August 2007. To the extent that defendants' other acts of mistreatment coincided with or followed Carrero's use of family leave, Carrero says those acts amounted to FMLA retaliation as well.

As we pointed out above, the FMLA forbids an employer from retaliating against an employee for exercising her FMLA rights. Henry v. United Bank, 686 F.3d 50, 55 (1st Cir. 2012) (citing 29 U.S.C. § 2615(a)). Thus, for example, an employer may not use an employee's FMLA leave as a negative factor in deciding to hire, fire, promote, or provide benefits to an employee. 29 C.F.R. § 825.220(c); see Henry, 686 F.3d at 55. However, while an employee may not be penalized for exercising her rights under the statute, an employee may nevertheless be discharged, not promoted,

-18-

or denied benefits for independent reasons during or after her taking of FMLA leave. See Henry, 686 F.3d at 55 (citing Nagle, 576 F.3d at 3) (finding that employee was discharged for independent reasons). In an FMLA retaliation case, the employer's intent — i.e., why the employer fired or acted against the employee — matters. Hodgens, 144 F.3d at 160.

To make out a prima facie case of FMLA retaliation, an employee must show: (1) she availed herself of a protected FMLA right; (2) she was "adversely affected by an employment decision;" and (3) "there was a causal connection between [her] protected conduct and the adverse employment action." See Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 107 (1st Cir. 2006). Though, as we set out above, a plaintiff need not plead facts sufficient to establish a prima facie case at the pleading stage, the elements of a prima facie case are useful "as a prism to shed light upon the plausibility of a [plaintiff's] claim." Rodríguez-Reyes, 711 F.3d at 54. We view Carrero's retaliation claims through that lens now, asking whether she has pleaded enough facts in toto to make entitlement to relief plausible in light of the prima facie standard that will pertain at trial. See id.

Carrero's primary claim is that defendants retaliated against her for exercising her FMLA rights when they discharged her after she attempted to take FMLA leave in October 2010. We assume

for the sake of argument that this claim meets the first two prongs of the prima facie test:  First, she availed herself of her FMLA rights when she took family leave in November 2007 and June 2008, and again when she attempted to "activate" leave in October 2010 that was approved in September 2010.  Second, she was adversely affected by her termination effective October 31, 2010.

However, as to the third prong, Carrero offers too little to connect her taking of FMLA leave and her termination to push her claim across the plausibility threshold.  Applying our two-step plausibility analysis, we first set aside Carrero's conclusory statement that there was "no . . . justification" for discharging her "during the period she was under the protection of the FMLA," other than to "retaliate against her . . . as part of the pattern of harassment and retaliation [she] suffered."  See Schatz, 669 F.3d at 55.  Calling her discharge FMLA retaliation does not make it so.  Indeed, to the extent the actions about which she complains could be seen as retaliatory, Carrero's participation in the internal corruption investigation offers a more likely explanation.

Next, we look to the facts Carrero puts forth, taking them as true and drawing all reasonable inferences in her favor. See id. Carrero says she was fired "during the effectiveness" of her FMLA leave.  She appears to assume that the chronological overlap between her termination and her leave renders the causal connection between the two actions obvious.  But while temporal

-20-

proximity is one factor from which an employer's bad motive can be inferred, by itself, it is not enough — especially if the surrounding circumstances undermine any claim of causation. See Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (finding plaintiff established prima facie case of retaliation under the Americans with Disabilities Act but noting that "chronological proximity does not by itself establish causality, particularly if the larger picture undercuts any claim of causation" (brackets omitted) (internal quotation marks omitted)); Hodgens, 144 F.3d at 170 ("[T]emporal proximity may give rise to a suggestion of retaliation, [but] that suggestion is not necessarily conclusive." (brackets omitted) (citation omitted) (internal quotation marks omitted)).

Carrero gives us no facts beyond the timing of her discharge — e.g., no negative comments, complaints, or expressions of reluctance by her superiors or co-workers about her FMLA leave-taking, no discussion of her FMLA leave status in performance reviews, etc. — that would lead us to think that defendants took her FMLA requests or leave status into account when deciding to discharge her. Compare Hodgens, 144 F.3d at 165 (finding plaintiff sufficiently showed causal connection between his FMLA-leave-taking and his termination where his supervisor warned him "he was taking 'too much time off'" shortly after he took leave, his performance evaluation "advised him to 'make every effort to have [his]

absenteeism fall within company guidelines,'" and his employer decided which employees to lay off based on a ranking that considered plaintiff's absence rate), with Donald v. Sybra, Inc., 667 F.3d 757, 763 (6th Cir. 2012) (finding temporal proximity plus supervisor's single negative comment did not establish employer's bad motive at summary judgment stage).

Instead, Carrero's complaint provides us with another explanation for defendants' decision to terminate her at that time: After an investigation of Carrero for alleged misconduct, two different officers recommended her termination after two separate hearings, and executive director Cordero decided to follow their advice in October 2010.[6] Whether the investigation was well-grounded or instead part of a long-standing desire to get rid of Carrero, the key point is that both the investigation and the alleged animus pre-existed Carrero's October 2010 attempt to take FMLA leave. In this respect, the bulk of the allegations in the complaint relate to her FMLA claim only in that they provide a detailed explanation of why she was fired, rightly or wrongly, and cut directly against any conclusion that her firing was related to FMLA-protected activity. Consequently, considering, as we must, the "cumulative effect of the complaint's factual allegations," see

_____

[6] Needless to say, we make no judgment as to whether Carrero actually committed this misconduct. We only note that the misconduct allegations are the reason both Carrero and her superiors provide for her termination.

-22-

Rodríguez-Reyes, 711 F.3d at 55, and the "larger picture" surrounding her discharge, see Wright, 352 F.3d at 478, we cannot find that Carrero's complaint plausibly supports a finding that her termination was causally connected to her requests for FMLA leave.

Carrero also claims that other adverse actions by defendants constituted impermissible FMLA retaliation insomuch as they coincided with or followed her use of family leave. For example, in November 2007 and June 2008, Ruiz initiated misconduct investigations of Carrero while Carrero was out on family leave. Also, while Carrero was out on leave in June 2008, Carvajal promoted three of Carrero's co-workers without giving Carrero an opportunity to interview.

However, even assuming arguendo that this claim meets the first two prongs of the prima facie inquiry, Carrero has not put forth sufficient facts to demonstrate a causal connection between her FMLA leave-taking and defendants' acts to establish a plausible claim for relief. Again, beyond synchronicity, Carrero makes no connection between those acts and her leave-taking.

As for Ruiz's opening of misconduct investigations, Carrero explicitly says Ruiz acted as he did because of her participation in the internal corruption investigation. She neither disclaims nor admits any misconduct on her part, and she

does not say the accusations were unfounded.[7]  She simply says Ruiz began the investigations "during the period when [she] was on family leave protected by the FMLA."  Again, an employer can take adverse action against an employee while she is on leave for reasons other than her leave status.  See Henry, 686 F.3d at 55 (citing Nagle, 576 F.3d at 3).  Thus, this allegation alone, without more, is not enough to support a plausible claim.

As for Carvajal's promotion of Carrero's co-workers, Carrero says only that these actions "affected [her] right to a promotion while protected by [the FMLA]."  Carrero has no greater (or lesser) right to promotion by virtue of her FMLA-leave status. See 29 C.F.R. § 825.216(a) ("An employee has no greater right . . . to . . . benefits or conditions of employment" because she takes FMLA leave.); 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as . . . promotions.").  Though Carrero says she applied for the open positions and was not given a chance to interview, she asserts no factual allegation as to why her FMLA leave had any bearing on Carvajal's decision not to interview her or award her the position.  See Orta-Castro, 447 F.3d at 114 (finding no proof that defendants took plaintiff's absences into account in denying her a higher position, even where plaintiff alleged an unidentified

---

[7] Again, we do not judge whether Carrero actually committed this misconduct.

human resources representative told her she was not given the position because of her absenteeism, and affirming dismissal of plaintiff's claim).

Considering Carrero's factual allegations as a whole, we again cannot say she has stated a plausible claim of FMLA retaliation based on defendants' adverse actions. As a result, the district court rightly found Carrero had not alleged a sufficiently plausible retaliation claim to withstand defendants' Rule 12(b)(6) motion to dismiss. So we journey on.

**4. Interference Claim**

Carrero also says defendants interfered with her FMLA rights by terminating her employment while she was out on leave to care for her sick mother.

As we set forth above, the FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of" any FMLA-protected right. 29 U.S.C. § 2615(a)(1). We recall that the FMLA entitles an employee to twelve weeks' leave per year for listed family and medical reasons, such as to care for a parent with a serious health condition. Nagle, 576 F.3d at 2; Hodgens, 144 F.3d at 159 (citing, inter alia, 29 U.S.C. § 2612(a)(1)(C)). However, "[i]f an employee is laid off during the course of taking FMLA leave and [her] employment is terminated, the employer's responsibility to continue FMLA leave, maintain . . . benefits[,] and restore the employee cease at the time the employee is laid

-25-

off." 29 C.F.R. § 825.216(a)(1). (We remember, of course, that an employer cannot discharge an employee <u>because</u> she requests or takes FMLA leave, <u>see</u> 29 C.F.R. § 825.220(c), but we dealt with this concern with respect to Carrero's retaliation claim.)

To withstand a motion to dismiss on her interference claim, a plaintiff need only plausibly state that she is entitled to the disputed leave. <u>See</u> <u>Coburn</u>, 429 F.3d at 331 (describing summary judgment standard).[8] Unlike in a retaliation claim, "no showing as to employer intent is required." <u>Id.</u> The key issue is simply whether the employer provided its employee the benefits to which she was entitled per the FMLA. <u>Hodgens</u>, 144 F.3d at 159.

In her complaint, Carrero does not assert that defendants wrongfully denied her requests for FMLA leave. To the contrary, she says PREPA permitted her to take FMLA leave both in November 2007 and June 2008. Ruiz also approved her third FMLA leave request in September 2010. Instead, Carrero says defendants interfered with her FMLA rights by terminating her employment once

---

[8] Other circuits have described the <u>prima facie</u> interference standard more fully as requiring an employee to show: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. <u>E.g.</u>, <u>Donald</u> v. <u>Sybra, Inc.</u>, 667 F.3d 757, 761 (6th Cir. 2012) (reh'g and reh'g en banc denied); <u>Goelzer</u> v. <u>Sheboygan Cty., Wis.</u>, 604 F.3d 987, 993 (7th Cir. 2010). As most of these elements are undisputed here, we use the abridged standard from our summary judgment jurisprudence to focus in on what is at issue. <u>See</u> <u>Coburn</u>, 429 F.3d at 331.

she "activated" her third leave in October 2010, rather than permitting her to take the three months' leave she requested.

Carrero admits her lawyer was notified of her discharge — originally effective October 3 but amended to October 31 — "by the middle of October[] 2010." She claims she was not informed of her termination at that time. Rather, she insists that she remained employed when she properly triggered her previously approved FMLA leave on October 22, was entitled to that leave, and was "protected by the law at the time she was illegally discharged from her employment."

However, the FMLA does not protect an employee from discharge for any reason while she is on leave — rather, as we discussed in the retaliation context, it protects her only from discharge because she requests or takes FMLA leave. See 29 C.F.R. § 825.220(c). Thus, while Carrero may have had a claim for leave prior to October 31, once her discharge took effect, Carrero was no longer entitled to FMLA leave benefits.[9] See 29 C.F.R.

---

[9] At oral argument, the panel asked Carrero's counsel whether, in the alternative, Carrero was also arguing that defendants had interfered with her FMLA rights for the limited time span between October 22 (when she requested leave) and October 31 (when she was discharged). In response, counsel simply repeated his argument that the termination was null and void, so Carrero had a right to three months' leave. Accordingly, any separate argument relating to this limited time period is waived. See United States v. Anderson, 745 F.3d 593, 598 (1st Cir. 2014); Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("[W]e deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument.").

§ 825.216(a)(1). As a result, she cannot state a plausible FMLA interference claim, and the district court correctly granted defendants' Rule 12(b)(6) motion to dismiss on this ground as well.

## C. Motion to Amend the Pleadings

In a last-ditch effort to save her FMLA claims, Carrero argues the district court abused its discretion by not granting or explicitly denying her post-judgment request to amend the pleadings. Carrero asked for leave to amend the pleadings as alternative relief in her motion to alter or amend judgment under Rule 59(e). The district court did not address Carrero's amend-pleadings request separately from her amend-judgment request; rather, it denied the motion altogether, saying only that Carrero "ha[d] not demonstrated a clear error of law, a change in the law, or new evidence that [she] could not have presented previously."

We review the district court's denial of relief under Rule 59(e) for abuse of discretion, mindful that the court enjoys "considerable" discretion in this area. Soto-Padro v. Pub. Bldgs. Auth., 675 F.3d 1, 9 (1st Cir. 2012); see also Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 32 (1st Cir. 2012). Rule 59(e) permits a party to move to alter or amend judgment within 28 days of entry of judgment. Fed. R. Civ. P. 59(e). We generally recognize three valid grounds for Rule 59(e) relief: "an 'intervening change' in the controlling law, a clear legal error, or newly-discovered evidence." Soto-Padro, 675 F.3d at 9.

Requests to amend the pleadings, on the other hand, are generally governed by Federal Rule of Civil Procedure 15(a) ("Rule 15(a)").[10]  Fisher v. Kadant, Inc., 589 F.3d 505, 508 (1st Cir. 2009).  Rule 15(a) says that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "If, however, a motion to amend is filed after the entry of judgment, the district court lacks authority to consider the motion under Rule 15(a) unless and until the judgment is set aside."  Fisher, 589 F.3d at 508 (citing Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006); Maldonado v. Dominguez, 137 F.3d 1, 11 (1st Cir. 1998)); Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 389 (1st Cir. 1994).  In other words, so long as the judgment remains in effect, a motion under Rule 15(a) is beside the point.  Fisher, 589 F.3d at 509.

Before us, Carrero does not challenge the district court's denial of her request to amend judgment based on the merits of her claims; rather, she appeals only its refusal of her request to amend the pleadings "without any justifiable reason."  However, the court did explain its rejection of Carrero's Rule 59(e) motion overall: Carrero had not established any of the three accepted grounds for Rule 59(e) relief — i.e., a change in the law, an error of law, or newly discovered evidence — in her motion.  Carrero does

---

[10] Carrero offered no specific legal support for her request to amend the pleadings, but we presume her request fell under Rule 15(a).

-29-

not say that this aspect of the court's ruling amounted to an abuse of discretion.  Because the court's initial judgment dismissing Carrero's claims therefore remained in place, Carrero's alternative request to amend the pleadings automatically failed.  See Fisher, 589 F.3d at 508-09.  The district court did not abuse its discretion by not spelling out what should have been obvious based on its resolution of Carrero's Rule 59(e) amend-judgment request. Accordingly, we reject Carrero's final challenge on this front.

### III. CONCLUSION

Our work completed, for the foregoing reasons, we affirm the district court's dismissal of Carrero's FMLA claims with prejudice.