# United States Court of Appeals
## For the First Circuit

No. 16-1306

HEIDI GERMANOWSKI,

Plaintiff, Appellant,

v.

PATRICIA HARRIS, individually and in her capacity as Register of
Deeds; COMMONWEALTH OF MASSACHUSETTS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Andrea F. Nuciforo, Jr. and Nuciforo Law Group LLC on brief
for appellant.
Heather A. Valentine, Assistant Attorney General, Government
Bureau, and Maura Healey, Attorney General of Massachusetts, on
brief for appellees.

April 12, 2017

**KAYATTA**, **Circuit Judge**.  Heidi Germanowski challenges the district court's order dismissing claims that her former employer violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2611–2654.  According to Germanowski, the facts pleaded in her complaint plausibly allege that her supervisor fired her because she sought leave protected by the FMLA.  We disagree and thus affirm.

## I.

Because this appeal follows a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept as true all well-pleaded facts in Germanowski's complaint and draw all reasonable inferences in her favor.  See Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 712 (1st Cir. 2014).

Germanowski worked at the Berkshire Middle District Registry of Deeds for more than a decade, ascending the ranks from Recording Clerk to First Assistant Register.  For much of her tenure, Germanowski worked alongside Patricia Harris, a defendant in this action.  They enjoyed a strong friendship in addition to a collegial working relationship.  But sometime after Harris became Germanowski's supervisor in January 2013, their relationship began to deteriorate, culminating in Germanowski's termination in February 2015.

According to the complaint, the trouble started a little over a year after Harris became Register.  Germanowski, then

serving as First Assistant Register, began experiencing stress and anxiety accompanied by fatigue, hair loss, aches, and gastrointestinal pain.  She sought medical attention, visiting her primary care physician and other healthcare providers.  She kept Harris abreast of her symptoms and physician visits.

A few months later, in June 2014, Harris allegedly began pressuring Germanowski to support William Galvin, the Secretary of the Commonwealth of Massachusetts, in his upcoming bid for reelection.  Germanowski twice refused Harris's requests to make financial contributions to Secretary Galvin's campaign committee.  Around the time of Germanowski's second refusal, Harris reassigned certain tasks from Germanowski to other employees and boxed her out of management meetings and decisions.  Harris also redoubled her efforts to extract a financial contribution from Germanowski, cautioning that "it would look bad" if she declined to make a contribution and demanding that she defend her decision.  Fearing that her continued employment was contingent upon making a contribution, Germanowski ultimately caved to the pressure in August 2014 and contributed.

The following month, Germanowski visited her gynecologist and complained of uncontrollable crying, weight loss, anxiety, and other symptoms of stress.  The gynecologist diagnosed Germanowski with anxiety disorder.  Once again, Germanowski

apprised Harris that she was seeking medical care and reported her symptoms.

Weeks after the diagnosis, in October 2014, Germanowski suffered a nervous breakdown while working. Harris drove Germanowski home, notwithstanding Germanowski's protests that Harris was the cause of her stress and anxiety. Germanowski saw her primary care physician, who prescribed medication and instructed her to contact a therapist. Over the following week, Germanowski tried to connect with Harris to discuss her absence from work and arrange coverage of her responsibilities. When they finally connected, "Harris accused Germanowski of disloyalty, and . . . of inappropriately informing staff members about Germanowski's condition." According to the complaint, these accusations worsened Germanowski's physical and emotional state.

Germanowski informed Harris that she had begun treatment with both a psychiatrist and a therapist. She then tried to return to work on October 20, two and a half weeks after her nervous breakdown, but Harris suggested another week of rest. They met at the conclusion of that week and agreed to Germanowski's return to work the following day, October 28.

The next several weeks were uneventful. In early December, however, Harris asked a question of Germanowski in the presence of another employee. Germanowski alleges that the question was "intended . . . to embarrass and humiliate

- 4 -

Germanowski, and to have significant emotional and physical consequences for Germanowski," and that it did so. Germanowski's complaint does not reveal what the question was.

Later that month, on Christmas Day, Germanowski received a sport pistol from her husband as a gift. She told Harris, who was familiar with Germanowski's sport shooting hobby. Approximately one month later, on January 28, 2015, Harris called Germanowski's husband to express her discomfort with the gift and ask whether Germanowski carried it to work. Germanowski's husband emphasized during their telephone conversation that Germanowski posed no danger to herself or others and denied that his wife carried the pistol at work.

The next day, Harris accused Germanowski of having an affair. According to the complaint, the accusation--which lacked any factual basis--was "made . . . to provoke a response from Germanowski" and "had its intended effect." The complaint does not describe that effect. It does allege that, later the same day, Harris left Germanowski two voicemails directing her not to come to work the following day, Friday, January 30. When Germanowski went to the Registry building on the morning of January 30 to drop off keys to a basement storage room, a court security officer denied her access to the building. Germanowski

claims that Harris told the officer and others than she posed a safety threat.

Two days later, on Sunday, February 1, Harris sent Germanowski a text message indicating that they needed to speak that day because Harris would not have time to do so on Monday or Tuesday. It is unclear from the complaint whether they connected that day or whether Germanowski reported to work the following day. But on the afternoon of Monday, February 2, Harris left word with Germanowski not to come to work on February 3.

At this point, Germanowski feared that her employment was "in jeopardy." She sent an email to Harris on February 3 stating "that she would be out sick for the week, and that she was scheduled to see her doctor." Two days later, on February 5, Germanowski saw her psychiatrist, who gave her a letter advising her to take a leave of absence in order to pursue treatment. Germanowski does not allege that she provided this letter to anyone at the Registry or that anyone at the Registry otherwise obtained it.

The next day, February 6, Germanowski received a voicemail message from the chief court officer. The message stated that Germanowski was terminated effective immediately. Moments

later, Germanowski received a written termination notice from Harris via email.

Germanowski brought this lawsuit against Harris (individually and in her official capacity) and the Commonwealth of Massachusetts, alleging in a five-count complaint that the defendants violated the FMLA as well as Massachusetts statutory and common law. According to the complaint, the defendants violated Germanowski's FMLA rights, discriminated against her on the basis of a covered impairment, illegally required her to participate in prohibited political activity, and wrongfully terminated her with actual malice.

In subsequent course, the district court granted a motion by the defendants to dismiss the case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The court dismissed on Eleventh Amendment grounds all of Germanowski's FMLA claims against the Commonwealth as well as those FMLA claims against Harris in her official capacity seeking monetary damages. It then considered the remaining FMLA claims against Harris and dismissed them because Germanowski's complaint failed to allege facts stating, or supporting the inference, that Harris knew or had reason to know at the time of Germanowski's termination that Germanowski intended to take FMLA-protected leave. Because Harris lacked such knowledge, the district court reasoned, it was implausible that Harris acted on account of it when terminating

Germanowski. Having dismissed Germanowski's FMLA claims with prejudice, the district court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. This appeal followed.

## II.

### A.

Germanowski appeals the portion of the district court's order dismissing certain FMLA claims against Harris not barred by the Eleventh Amendment. She also asks this court to order reinstatement of her state law claims upon reversing the dismissal of her FMLA claims. "We review orders granting motions to dismiss under Rule 12(b)(6) de novo, applying the same criteria as the district court." Carrero-Ojeda, 755 F.3d at 717 (emphasis omitted). In undertaking this review, we ask whether the well-pleaded factual allegations, viewed in the light most favorable to the plaintiff, state a claim for which relief can be granted. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011) (citing Fed. R. Civ. P. 12(b)(6)). A complaint clears this hurdle when the facts alleged, which we take as true, and the inferences they support, which we draw in the plaintiff's favor, "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). By "plausibly," we mean "something more than merely possible," id., or "merely consistent

with a defendant's liability," Ocasio-Hernández, 640 F.3d at 11 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"It is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). But this does not mean "that the elements of the prima facie case are irrelevant to a plausibility determination in a discrimination suit. . . . Those elements are part of the background against which a plausibility determination should be made." Id. In order to give rise to a "plausible" claim, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While this standard does not impose a "probability requirement," it does require "more than a sheer possibility that a defendant has acted unlawfully." Id. Engaging in this plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

**B.**

The FMLA, in relevant part, entitles "an eligible employee . . . to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The leave can be

- 9 -

unpaid. Id. § 2612(c). "Upon an employee's return, her employer must reinstate her to the same or an equivalent position, without any loss of accrued seniority." Carrero-Ojeda, 755 F.3d at 718 (citing Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005)); see also 29 U.S.C. § 2614(a)(1).

The pertinent regulations place the burden on the employee to notify the employer of the need for such leave. See 29 C.F.R. § 825.303. Where the leave is unforeseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." Id. § 825.303(a). In providing such notice, the employee must supply "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." Id. § 825.303(b). What constitutes "sufficient information" depends on whether the employee has received leave for that FMLA-qualifying reason before. If she has, "the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave." Id. If she has not, "the employee need not expressly assert rights under the FMLA or even mention the FMLA." Id. In either case, however, the employee does not satisfy this burden merely by calling in sick. See id. ("Calling in 'sick' without

providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.").

To protect the exercise of the substantive rights described above, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" such rights. 29 U.S.C. § 2615(a)(1). Under this provision, employees may assert so-called "interference" claims alleging deprivations of their substantive rights. Colburn, 429 F.3d at 331. We also permit employees to advance claims under a "retaliation" theory based on their employers' "use [of] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); see also Colburn, 429 F.3d at 330-32 (identifying the basis of retaliation claims and exploring the overlap between retaliation and interference claims).

Germanowski's complaint might be read as seeking to assert both an interference claim and a retaliation claim. Without objection, the district court so construed it. On appeal, however, Germanowski focuses her challenge on the district court's dismissal of her FMLA retaliation claim. This narrowing of Germanowski's focus makes good sense because the interference claim necessarily fails if Germanowski was properly discharged. Carrero-Ojeda, 755 F.3d at 722 ("[T]he FMLA does not protect an employee from discharge for any reason while she is on leave--

rather, . . . it protects her only from discharge because she requests or takes FMLA leave."). We therefore also train our analysis of this appeal on Germanowski's contention that the district court erred in dismissing her FMLA retaliation claim.

## c.

We begin with the elements of a prima facie case of FMLA retaliation, which "are useful 'as a prism to shed light upon the plausibility of a [plaintiff's] claim.'" Id. at 719 (alteration in original) (quoting Rodríguez-Reyes, 711 F.3d at 54). The prima facie case has three elements that Germanowski need establish: "(1) she availed herself of a protected FMLA right; (2) she was 'adversely affected by an employment decision;' and (3) 'there was a causal connection between [her] protected conduct and the adverse employment action.'" Id. (alteration in original) (quoting Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 107 (1st Cir. 2006)).

Like the district court, we find that the complaint's allegations lack a plausible theory of causation connecting Germanowski's attempt to exercise FMLA rights and her termination. Our reasons are slightly different than the district court's but are entirely consistent with its result. See Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 8 (1st Cir. 2013).

The district court homed in on the February 3 email, finding that it gave no notice that Germanowski was asserting any

- 12 -

right to unpaid leave of up to twelve weeks for a serious health condition.[1]  Rather, the cryptic email, within its four corners, bore many of the attributes of a simple "[c]alling in 'sick'" missive.  29 C.F.R. § 825.303(b).  So construing it, the district court reasoned that Harris could not have retaliated against Germanowski for an assertion of FMLA rights that did not plausibly appear to have been made.  See Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 70 (1st Cir. 2015) ("To demonstrate that he was fired in retaliation for engaging in FMLA-protected conduct, [the plaintiff] 'must show that the retaliator knew about [his] protected activity--after all, one cannot have been motivated to retaliate by something he was unaware of.'" (second alteration in original) (quoting Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013))).

Germanowski's email certainly could have been more clear concerning the reason for which she was missing work.  See Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008-09 (7th Cir. 2001) (holding that where plaintiff had previously advised supervisors of her depression, which "incapacitated her on a particular day[,] she could have made clear the 'serious' nature of her condition by referring to knowledge already in the employer's possession"; by

_____

[1] Contrary to Germanowski's argument on appeal, the complaint does not "detail[] the repeated communications she had with defendants on and after February 2, 2014 regarding her leave."  It instead describes only one communication:  this February 3 email.

- 13 -

instead saying only that she was "sick," plaintiff "not only withheld important information from the employer but likely threw it off the scent").

We nevertheless do not settle on the lack of notice as a reason to dismiss the complaint. The allegations here depict Germanowski's employer as already knowing that she was suffering from a chronic and significant health condition, symptoms of which were recently obvious to her employer. In this context, a notice that Germanowski would be out for the week and would be seeing her doctor might arguably be read as informing her employer that she would be absent due to a serious health condition.

We rest our decision, instead, on an alternative ground addressed and argued in the parties' briefs on appeal. In a nutshell, no matter how one interprets the February 3 email, the allegations in the complaint fail to make it plausible that the email triggered the firing. Rather, Germanowski's own allegations make it almost certain that the decision to fire her was already in the works and had nothing to do with the email.

To explain why this is so, we begin with the allegations that describe Harris's treatment of Germanowski's prior illness-related absences. The complaint alleges that, during the year preceding Germanowski's termination, Harris consistently

accommodated Germanowski when she felt unable to work.[2]  As best the complaint reveals, whenever Germanowski asked to stay out of work, Harris agreed, and there is no indication that Harris required that the absences be unpaid or even reduced Germanowski's available FMLA leave time.  As Germanowski describes it, Harris actually urged Germanowski to stay out longer during her leave of absence in October 2014.[3]  This record provides poor soil in which to plant a claim that Harris's receipt of a notice that Germanowski would be out sick for the week precipitated Germanowski's termination.

Germanowski's principal rejoinder is to urge an inference of a causal link between the February 3 email and the firing because the firing came fast on the heels of the email. Certainly there are circumstances in which a "'[v]ery close' temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection."  Sánchez-Rodríguez v. AT & T Mobility P.R.,

---

[2] Germanowski argues in her brief on appeal that Harris made "relentless barbs and negative comments concerning . . . her leave taking for months before she was discharged."  That characterization lacks support in the complaint's allegations.

[3] Germanowski advances a perfunctory argument without any cited support to the effect that we should ignore these pleaded facts as merely pleading in the alternative.  While we doubt this is so, we need not decide because the argument is waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

<u>Inc.</u>, 673 F.3d 1, 15 (1st Cir. 2012) (quoting <u>Calero-Cerezo</u> v. <u>U.S. Dep't of Justice</u>, 355 F.3d 6, 25 (1st Cir. 2004)). Imagine an employee with an unblemished record and steady performance who, shortly after requesting FMLA leave, is terminated by her employer without explanation. In such circumstances, temporal proximity would most likely suffice to allege a plausible claim. At the same time, the notion that temporal proximity is not always enough must also be correct. Imagine an employee shoots her boss, immediately asks for FMLA leave, and gets fired the next day. We would hope that our common sense would protect us from saying that the close proximity between the FMLA request and the termination makes retaliation plausible.

Here, there was no shooting. But the allegations relate a history of an emotionally fraught and longstanding dispute between the employer and the employee, an expressed fear by the employer that the employee may have brought a gun to work, and a subsequent lock-out of the employee, all in a context that caused even Germanowski to suspect imminent termination, and all before she sent her email saying she would be out sick. To think that an employer in such a case fired Germanowski because she asked for some time off while she was already locked out is to suggest that common sense borne of real world experience has no role to play in the plausibility analysis. We think otherwise. As the district court observed, the "FMLA is not a tool an employee can use to

- 16 -

delay or avoid a termination." <u>Germanowski</u> v. <u>Harris</u>, No. 15-CV-30070, 2016 WL 696097, at *4 (D. Mass. Feb. 19, 2016).

Germanowski's remaining arguments fare even worse. She contends that Harris was out to get her, intentionally aggravated her condition, and began taking away her responsibilities. But that, too, all preceded the February 3 email, and thus cuts against the causal connection Germanowski's complaint need make plausible. Germanowski alleges that Harris accused her of disloyalty for telling other employees about her condition, but she offers no reason why such an accusation bears on the issue at hand. All in all, her arguments--even considered cumulatively--simply reinforce the plausibility of other, preexisting motives behind a termination that had been set in motion before the February 3 email.

To summarize, the only issue raised on appeal is whether the complaint plausibly alleges that Harris terminated Germanowski in retaliation for asserting rights protected by the FMLA. <u>Pagán-Colón</u> v. <u>Walgreens of San Patricio, Inc.</u>, 697 F.3d 1, 8 (1st Cir. 2012) ("[A] crucial component of an FMLA retaliation claim is some animus or retaliatory motive on the part of the plaintiff's employer that is connected to protected conduct."). For the foregoing reasons, we agree with the district court that it does not.

<u>Affirmed</u>.