Against this backdrop, the court considers each of the plaintiff's claims on the merits.
B. Procedural Due Process
The essence of the plaintiff's procedural due process claim is that the defendants terminated her without first affording her the right to a pre-termination hearing. As noted above, though, the plaintiff explicitly waived her right to a pre-termination hearing in executing the LCA. Summary judgment will therefore enter in the defendants' favor on this claim. See e.g. Kelly v. New York City Dep't of Envtl. Prot., 3:13-CV-1110, 2014 WL 837469, *7, 2014 U.S. Dist. LEXIS 27039, *20 (N.D.N.Y. March 4, 2014).
C. Substantive Due Process
The gravamen of the plaintiff's substantive due process claim is that the defendants fabricated instances of misconduct in order to create an environment where they justifiably could foist the LCA upon her, and then recast benign post-LCA incidents as instances of misconduct so they could justify terminating her under the agreement.
At least a portion of this claim is barred by the LCA. Ostensibly, the defendants intended to terminate the plaintiff because she failed to heed the directive that she disassociate herself from all activities and functions concerning the Beede Center. Because the LCA identified the failure to follow directions as one of the bases of misconduct that would warrant termination, and because the plaintiff waived her right to bring a court action for "any further disciplinary action" based on her alleged misconduct, including a termination, she has waived the right to challenge her termination here.
Having so found, this does not really dilute the thrust of the substantive due process claim where the plaintiff has not waived her claim that the defendants fabricated instances of misconduct in order to induce her to sign the LCA and to set the stage for her subsequent ouster.
Still, the court finds that the plaintiff has not adduced sufficient evidence of such a grand scheme to allow the substantive due process claim to survive beyond summary judgment. In order to establish a substantive due process claim, a plaintiff must show that the acts were so egregious as to shock the conscience, and that they deprived her of a protected interest in life, liberty, or property. Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006). As the court indicated previously in denying the defendants' motion to dismiss, the plaintiff, in order to meet this standard, would essentially need to prove all of the factual allegations she had leveled against the defendants, that is, that she had never been disciplined in the 27 years prior to engaging in protected FMLA conduct, that the defendants targeted her specifically because she had engaged in protected FMLA conduct, that they falsely manufactured disciplinary issues as a way to impose the LCA on her, that they offered her the LCA at an emotionally vulnerable time when she had recently been demoted and was cleaning out her office, that she was told in unambiguous terms that she would *227 be terminated if she did not sign the LCA, and that they then deliberately concocted a breach of the LCA so they could invoke the agreement to justify the plaintiff's termination. The evidence here does not support all of these allegations.
To be sure, the evidence in the record amply reflects the precipitous breakdown in the parties' relationship from 2015 into 2016, as well as the increasing level of scrutiny the defendants seemed to apply to the plaintiff's movements and conduct. However, the evidence falls short of showing a broad conspiracy-minded scheme that shocks the conscience and amounts to a deprivation of a protected interest. Among other things, it is undisputed that the plaintiff did miss some meetings, did play tennis during working hours, did fail to complete timely certain key tasks such as the capital plan, and did fail to abide by explicit instructions not to disclose information relating to the Town's internal investigation. For her part, the plaintiff does offer various explanations to place some of these checkered events in context. Still, though, these facts, taken together, tend to mute somewhat the severe image urged by the plaintiff of a workplace united against her and intent on her removal. In the court's view, even assuming the defendants acted in bad faith, no reasonable juror incorporating these facts could conclude that the defendants engaged in egregious, conscious shocking behavior in presenting Higgins with the LCA or thereafter in determining that she had breached it. Accordingly, the defendants are entitled to summary judgment on this claim. See e.g., Kraft v. Larry A. Mayer Univ. of N.H. , No. 10-cv-164-PB, 2012 WL 235577, 2012 U.S. Dist. LEXIS 8427 (D. N. H. January 25, 2012) (allowing summary judgment where, even assuming plaintiff's termination resulted from defendant's retaliatory animus and that other college administrators condoned the retaliatory termination, their bad faith motivation was insufficient to amount to conscience-shocking behavior).
D. Violation of the FMLA
The plaintiff contends that the defendants retaliated against her for taking leave to care for her husband, by demoting her, imposing the LCA upon her, and ultimately terminating her. Whereas the LCA partially or completely barred the plaintiff's due process claims, it does not bar her FMLA claim because the FMLA prohibits an employer from inducing an employee to waive her prospective rights under the FMLA. 29 C.F.R. § 825.220(d) ; see also Paylor v. Hartford Fire Ins. Co. , 748 F.3d 1117, 1122 (11th Cir. 2014) ; Whiting v. The Johns Hopkins Hosp. , 416 Fed. App'x. 312, 314 (4th Cir. 2011) ; Faris v. Williams WPC-I, Inc. , 332 F.3d 316, 320 (5th Cir. 2003). Accordingly, notwithstanding any language in the LCA to the contrary, the plaintiff has not waived any portion of her FMLA retaliation claim by entering into that agreement. Turning then to the merits, I find that summary judgment is not appropriate because there is a genuine dispute of fact as to whether the defendants retaliated against the plaintiff for taking FMLA leave.
To begin, the FMLA entitles eligible employees to take up to a maximum of twelve weeks of leave for a family member's medical reason and return to the same or an equivalent employment. 29 U.S.C. § 2612(1)(1)(D). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]," 29 U.S.C. § 2651(a)(1), or "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful [by the FMLA]." 29 U.S.C. § 2615(a)(2). Employers who violate the FMLA are liable to the employee for damages and such equitable relief as may be appropriate. 29 U.S.C. § 2617(a)(1).
*228 A plaintiff alleging retaliation for taking FMLA leave must establish that: (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment action; and (3) there is a causal connection, that is, the employer took the adverse action because of the protected reason. Gourdeau v. City of Newton , 238 F.Supp.3d 179, 184-185 (D. Mass. 2017). When a plaintiff presents only circumstantial evidence of retaliation, retaliation claims are analyzed under the same McDonnell Douglas burden-shifting framework used to assess discrimination claims. Hodgens v. General Dynamics Corp. , 144 F.3d 151, 160 (1st Cir. 1998) ; McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Accordingly, because the plaintiff does not really proffer any direct evidence of retaliation, the court examines her retaliation claim using the burden-shifting framework.
Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. 1817. If she establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action. Id. If the employer succeeds in doing so, the burden then shifts back to the plaintiff to demonstrate that the employer's proffered reason was not the true reason for the employment decision. Id. at 803, 93 S.Ct. 1817.
Applied here, the court finds that the plaintiff has met her burden of establishing a prima facie violation of the FMLA. First, there is no dispute that the plaintiff availed herself of a protected right where she began taking time in or around the middle of 2015 to assist her husband with his medical needs, and formally requested FMLA paperwork on January 6, 2016. There is also no dispute that the plaintiff suffered adverse employment actions where she was demoted, allegedly forced to sign the LCA, and ultimately forced from her position.
With respect to the "causal connection" element, the court finds that the plaintiff has met her burden. First, while not dispositive, it is probative that the plaintiff was demoted just one week after formally requesting FMLA paperwork. See e.g., Germanowski v. Harris, 854 F.3d 68, 74 (1st Cir. 2017) (noting that a very close temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection). Second, although the defendants argue otherwise, the facts in a light most favorable to the plaintiff allow for an inference that the defendants took actions against the plaintiff because she took protected leave. On this issue, the defendants argue that Higgins cannot show a causal connection because she cannot show that Whelan as the ultimate decision maker was aware that she was taking FMLA leave. There is contrary evidence, however, that Whelan did know because Hodges informed him in the summer of 2015 that Higgins was dealing with a family illness, and apparently informed him and Foley by email in January 2016 that the plaintiff needed to take FMLA leave. If true, these facts would be sufficient to support the inference that Whelan knew the plaintiff was taking protected leave to deal with a family member's medical needs. See e.g., Byrne v. Avon Products, Inc. , 328 F.3d 379, 382 (7th Cir. 2003) (knowledge element satisfied where employer knows of the employee's need for leave, even if employee does not mention statute or demand its benefits).
Even assuming Whelan did not have actual knowledge that the plaintiff was taking protected leave, Hodges knew as much and her knowledge can be imputed *229 to Whelan under a "cat's paw" theory. Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77 (1st Cir. 2004) ; Harlow v. Potter, 353 F.Supp.2d 109, 117 (D. Me. 2005). To invoke the cat's paw analysis, the plaintiff must point to evidence sufficient to show that (1) Hodges exhibited discriminatory animus and (2) Whelan acted as the conduit of that prejudice. Harlow, 353 F.Supp.2d at 115. In the court's view, even if not overwhelming, there is enough evidence to raise a triable question as to whether Hodges acted as a biased supervisor and facilitated the plaintiff's demotion and termination by recommending the same to Whelan. In that regard, Whelan admitted that his perception of Higgins' performance was based in part on information gleaned from Hodges. Plaintiff's SUF, at ¶ 23.
As the plaintiff has made out a prima facie case of FMLA retaliation, the burden shifts back to the defendants to articulate a non-discriminatory reason for Higgins' treatment. Hodgens, 144 F.3d at 160. The defendants counter that they disciplined the plaintiff because of the instances of misconduct noted above, not because she took protected leave, and thereafter forced her to leave in lieu of termination only after she committed the same sort of misconduct that impelled the LCA to begin with. As there is evidence as noted above that the plaintiff was responsible for the conduct as alleged, the court finds that the defendants have articulated a legitimate reason for demoting and eventually terminating her, and the burden now shifts back to the plaintiff to show that the defendants' explanation was pretextual and in reality motivated by her decision to take protected leave. Hodgens , 144 F.3d at 160.
The court finds that the plaintiff has met her burden. The record shows that the plaintiff had worked for the Town of Concord for over two decades, apparently without incident, and had been rated a "top performer" and "joy to work with" as recently as June 2015. Notably, the parties' relationship began to change shortly after this positive assessment, and around the time the plaintiff informed Hodges of her husband's cancer diagnosis and that she would need to take leave to assist him. There is evidence that following this development, Hodges became frustrated and had numerous conversations with the HR director about Higgins missing meetings. There is also evidence that Hodges and Town officials treated the plaintiff differently than other similarly situated employees, in particular by disciplining the plaintiff alone for speaking to others about the internal investigation despite evidence that Straggas and Bush had done the same. And perhaps most notably, there is evidence that Hodges told Straggas that the plaintiff was demoted because she was taking so much time from work to care for her husband. Based on the foregoing, a rational juror could find that the defendants' stated reasons for acting as they did were pretextual, and that they were instead taken because the plaintiff took protected leave. Summary judgment is therefore not appropriate on this claim.
VI. CONCLUSION
For the foregoing reasons, the Defendants' Motion for Summary Judgment (Dkt. No. 71) is GRANTED in part and DENIED in part. Summary Judgment will be entered on the plaintiff's due process claims but denied on the claim of FMLA retaliation.