*106 Roman-Oliveras v. Puerto Rico Elec. Power Auth. , 655 F.3d 43, 48 (1st Cir. 2011) (citation omitted); see also 42 U.S.C. § 12102(1).
Plaintiff asserts that her "impairments at times necessitated absences from work, required ongoing medical treatment and substantially impaired her ability to think, concentrate, walk and/or work (among other major life activities)." (Docket No. 1 ¶ 108). Taking these allegations as true, it is plausibly that Plaintiff qualifies as disabled within the meaning of the ADA. Cf. Leonard v. American Med. Response , 2009 WL 1883725, at *3 (D. Mass. July 1, 2009) (dismissing ADA claim where plaintiff made no allegations that his emotional disorder affected major life activities).
ii. Whether Defendants Took Adverse Action
"An adverse employment action is one that affects employment or alters the conditions of the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Morales-Vallellanes v. Potter , 605 F.3d 27, 35 (1st Cir. 2010) (quotation marks, alterations, and citations omitted). More generally, the Supreme Court held that adverse actions encompass "employer actions that would have been materially adverse to a reasonable employee" and "must be harmful to the point that they could well dissuade a reasonable worker from" engaging in protected activity. Burlington Northern and Santa Fe Ry. Co. v. White , 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).
I find that Plaintiff's PIP plan does not qualify as an adverse action because it did not alter the terms or conditions of her employment. See Simon v. Vanguard Med. Assocs., Inc. , 2015 WL 7201170, at *7 (D. Mass. Nov. 16, 2015) ("Placing an employee on an improvement plan without any changes in his conditions of employment ... fails the adverse action test."); James v. C-Tran , 130 Fed. App'x. 156, 157 (9th Cir. 2005) ("Because the performance improvement plan was non-disciplinary training that did not materially impact [the employee's] compensation, terms, conditions, or privileges of employment, it was not an adverse employment action."); Brown v. Am. Golf Corp. , 99 Fed. App'x. 341, 343 (2d. Cir. 2004) (same). Cf. Spears v. Missouri Dep't of Corr. & Human Res. , 210 F.3d 850, 854 (8th Cir. 2000) ("An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.").
A claim for constructive discharge "typically 'refers to harassment so severe and oppressive that staying on the job while seeking redress-the rule save in exceptional cases-is intolerable.' " Gerald v. Univ. of P.R. , 707 F.3d 7, 25 (1st Cir. 2013) (quoting Lee-Crespo v. Schering-Plough Del Caribe, Inc. , 354 F.3d 34, 45 (1st Cir. 2003) ). Plaintiff claims she felt forced to resign after Defendants declined to reconsider the PIP and refused to review her evidence that the PIP was unwarranted. These allegations are simply not enough for the Court to infer a constructive discharge. First, while Plaintiff asserts the PIP accused her of not satisfactorily executing standard work, communicating, or "teaming," she fails to explain the contents of the PIP. Consequently, it is impossible for the Court to assess whether its terms created an intolerable work environment. Further, Defendants' refusal to reconsider the PIP is itself not "harassment so severe and oppressive" that a reasonably *107 employee would find staying on the job intolerable. Accordingly, I find that the issuance or refusal to reconsider the PIP are not adverse employment actions.
I do find, however, that Plaintiff's job changes constitute adverse actions. Plaintiff's reassignment to the "Manufacturing Coordinator II" position was more physically demanding and required Plaintiff to deliver parts by pushing a cart over fifty pounds. I find this change qualifies as a "reassignment with significantly different responsibilities" to constitute an adverse employment action. Morales-Vallellanes , 605 F.3d at 35. Cf. Marrero v. Goya of Puerto Rico, Inc. , 304 F.3d 7, 23 (1st Cir. 2002) ("[A] transfer or reassignment that involves only minor changes in working conditions normally does not constitute an adverse employment action."). In addition, forcing Plaintiff to stand all day and refusing to provide a fatigue mat also might "dissuade a reasonable worker from" engaging in the protected activity and therefore constitutes an adverse employment action. See Burlington Northern , 548 U.S. at 57, 126 S.Ct. 2405.
Plaintiff claims that "Karl Storz discriminated against [her] on account of her disability." (Docket No. 1 ¶ 118). The most natural inference from Plaintiff's complaint, however, is that the change in her employment conditions was a response to her FMLA leave. Indeed, Plaintiff alleges that "upon [her] return from FMLA leave, Defendants made changes to [her] job that caused her physical pain and emotional distress and aggravated her medical condition and disabilities." Id. ¶ 33. Thus, I find that the temporal proximity between Plaintiff's FMLA leaves and the adverse employment actions makes the causal link between the adverse actions and her disabilities unlikely. Further, Plaintiff has done nothing to demonstrate a link between her disabilities and the adverse actions other than the conclusory assertion that there is one. That is not enough. See Twombly , 550 U.S. at 555, 127 S.Ct. 1955 (holding that plausibility pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Accordingly, Counts IV and V must be dismissed.[4]
3. Retaliation Claims (Counts II, IV, VI, & IX)
Plaintiff alleges retaliation under the FMLA, the ADA, Mass. Gen. Laws ch. 151B, and Mass. Gen. Laws ch. 152, § 75B(2).[5]
"Case law recognized that an ADA plaintiff need not succeed on a disability discrimination claim in order to assert a claim for retaliation." Colon-Fontanez , 660 F.3d at 36. Accordingly, despite the dismissal of Plaintiff's disability discrimination claims, the Court will proceed to assess the viability of her retaliation claims.
To make out a prima facie case of retaliation, an employee must how: (1) she engaged in protected activity or availed herself of a protected right;[6] (2)
*108 she was adversely affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action." Carrero-Ojeda , 755 F.3d at 719 (FMLA) ; Soileau v. Guilford of Maine, Inc. , 105 F.3d 12, 16 (1st Cir. 1997) (ADA); Psy-Ed Corp. v. Klein , 459 Mass. 697, 707, 947 N.E.2d 520 (2011) (Mass. Gen. Laws ch. 151B); Benoit v. Technical Mfg. Corp. , 331 F.3d 166, 177 n.5 (1st Cir. 2003) ( Mass. Gen. Laws ch. 152, § 75B(2) ). Of course, a plaintiff "need not plead facts sufficient to establish a prima facie case at the pleading stage," Carrero-Ojeda , 755 F.3d at 719, but those elements may serve "as a prism to shed light upon the plausibility of a [plaintiff's] claim." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013).
a. Adverse Action
As noted above I find that only the changes to Plaintiff's employment conditions constitute adverse actions. Accordingly, the only viable retaliation claim is her FMLA claim. The remaining protected activities occurred after the adverse actions.[7] See Germanowski v. Harris , 854 F.3d 68, 75 (1st Cir. 2017) (dismissing retaliation claim where alleged retaliation preceded protected conduct "and thus cut[ ] against the causal connection [the plaintiff's] complaint need[ed] to make plausible"); Ameen v. Amphenol Printed Circuits, Inc. , 777 F.3d 63, 70 (1st Cir. 2015) ("To demonstrated that he was fired in retaliation for engaging in FMLA-protected conduct, [the plaintiff] must show that the retaliator knew about [his] protected activity-after all. One cannot have been motivated to retaliate by something he was unaware of.' " (second alteration in original) (quotation marks and citation omitted)).
Defendants further argue that this principle also "dooms Plaintiff's FMLA claim-at least to the job modifications-because Plaintiff alleges that she knew of these changes before taking FMLA leave." (Docket No. 7, at 17). This is not the relevant inquiry. The proper question is whether Defendants knew of Plaintiff's plan to take leave before modifying her position. According to Plaintiff, "Defendants informed her that upon her return from leave she would be transferred to the Manufacturing Coordinator II position." (Docket No. 1, ¶ 23). The most natural reading of Plaintiff's Complaint is that Defendants learned of Plaintiff's plan to take FMLA leave and then decided to change her employment duties when she returned.
b. Causal Connection
As noted above, although the proximity between Plaintiff's FMLA leave and the changes in her employment conditions undermines the plausibility of some of her claims, that proximity supports the plausibility that Defendants retaliated against her for taking leave.
" 'Very close' temporal proximity between protected activity and an adverse action can satisfy a plaintiff's burden of showing causal connection." Sánchez-Rodríguez v. AT & T Mobility P.R., Inc. , 673 F.3d 1, 15 (1st Cir. 2012) (quoting Calero-Cerezo v. U.S. Dep't of Justice , 355 F.3d 6, 25 (1st Cir. 2004) ); see also Wyatt v. City of Boston , 35 F.3d 13, 16 (1st Cir. 1994) ("One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time *109 to the employer's adverse action."). However, "the notion that temporal proximity is not always enough must also be correct." Germanowski v. Harris , 854 F.3d 68, 74 (1st Cir. 2017). In Germanowski , the First Circuit dismissed a retaliation claim for failure to plausibly demonstrate a causal connection where the
allegations relate[d] a history of an emotionally fraught and longstanding dispute between the employer and the employee, an expressed fear by the employer that the employee may have brought a gun to work, and a subsequent lock-out of the employee, all in a context that caused even Germanowski to suspect imminent termination, and all before she sent her email saying she would be out sick. To think that an employer in such a case fired Germanowski because she asked for some time off while she was already locked out is to suggest that common sense borne of real world experience has no role to play in the plausibility analysis. We think otherwise.
Id. at 75.
Here, unlike in Germanowski , for over fifteen years, Plaintiff had never been formally disciplined and consistently received positive performance reviews. Accepting Plaintiff's allegations as true, it was only after she informed Defendants that she would be taking FMLA leave that her employer began to take adverse actions against her. Accordingly, although it is not always the case, the temporal proximity here makes Plaintiff's claims of retaliation plausible.
Therefore, Count II survives this motion. However, Counts IV, VI, and IX must be dismissed.
Conclusion
For the reasons stated above, Defendants' motion is granted in part and denied in part. Accordingly, Counts II and III survive this motion while Counts I, IV, V, VI, and IX are dismissed. The Court also notes that although Defendants proffered no arguments as to why Counts VII or VIII should be dismissed, the Court finds them plausible insofar as they relate to Count III.
SO ORDERED

Count IV alleges discrimination and retaliation based on Plaintiff's alleged disability. Therefore, Count IV is dismissed insofar as it is based on discrimination. I will address the retaliation portion of the claim below.

Although the FMLA does not explicitly permit retaliation claims, it is well-established that a cause of action for retaliation exists under the FMLA. See Henry v. United Bank , 686 F.3d 50, 55 (1st Cir. 2012) ("The [FMLA] also prohibits employers from retaliated against employees for exercising their statutory rights.").

Defendants do not argue that Plaintiff failed to engage in protected activity. Therefore, the Court will assume that Plaintiff has engaged in protected activity for the purposes of this motion.

On November 30, 2017, Plaintiff reported a work-related injury, her protected activity for retaliation under the Workers' Compensation Act. Similarly, on January 3, 2018, Plaintiff first complained about disability-related discrimination and retaliation, her protected activity under the ADA and Chapter 151B. Both of these complaints occurred after the changes to her employment conditions began.